**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| STEVEN BAYER AND AARON LLOYD, <br><br> Plaintiffs, <br><br> v. <br><br> COMCAST CABLE COMMUNICATIONS, LLC, <br><br> Defendant. | No. 1:12-cv-08618 <br> Honorable Robert W. Gettleman |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION TO COMPEL ARBITRATION AND STAY LITIGATION**

Gordon B. Nash, Jr.
Chancé L. Cooper
**Drinker Biddle & Reath LLP**
191 North Wacker Drive, Suite 3700
Chicago, IL 60606-1698
Tel: (312) 569-1000
Fax: (312) 569-3000

*Attorneys for Defendant
Comcast Cable Communications, LLC*

Seamus C. Duffy
Michael W. McTigue, Jr.
Michael P. Daly
Meredith D. Slawe
**Drinker Biddle & Reath LLP**
One Logan Square, Suite 2000
Philadelphia, PA 19103-6996
Tel: (215) 988-2700
Fax: (215) 988-2757

*Of Counsel for Defendant
Comcast Cable Communications, LLC*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

I. INTRODUCTION ................................................................................................................. 1

II. BACKGROUND ................................................................................................................... 1

    A.    Plaintiff Bayer Agreed To Arbitrate His Claim ......................................................... 1

    B.    Plaintiff Lloyd Agreed to Arbitrate His Claim ......................................................... 3

    C.    The Terms of the Parties' Arbitration Agreements .................................................. 3

        1.    Bayer and Lloyd's Arbitration Agreements ................................................ 3

        2.    Lloyd's Agreement Contains An Opt Out Provision ................................... 6

    D.    Plaintiffs Have Disregarded Their Arbitration Agreements ................................... 7

III. ARGUMENT ......................................................................................................................... 7

    A.    Plaintiffs Agreed To Resolve Disputes With Comcast Through Arbitration .......... 7

    B.    Plaintiffs' Disputes Are Within The Scope Of Their Arbitration Agreements ................................................................................................................. 9

    C.    Plaintiffs Should Be Compelled To Resolve Their Claims Through Arbitration ............................................................................................................... 11

    D.    This Action Should Be Stayed Pending Arbitration ............................................. 12

IV. CONCLUSION .................................................................................................................... 13

## TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

*AT&T Mobility LLC v. Concepcion*,
　　131 S. Ct. 1740 (2011)..................................................................................................7, 12

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
　　475 U.S. 643 (1986)...............................................................................................................9

*Boomer v. AT&T Corp.*,
　　309 F.3d 404 (7th Cir. 2002) ................................................................................................9

*Clemins v. GE Money Bank,*
　　No. 11-00210, 2012 U.S. Dist. LEXIS 165603 (E.D. Wis. Nov. 20, 2012) .....................12

*Corrigan v. Domestic Linen Supply Co.,*
　　No. 12-0575, 2012 U.S. Dist. LEXIS 100961 (N.D. Ill. July 20, 2012) ....................11, 12

*Davis v. JP Morgan Chase Bank,*
　　No. 03-6891, 2004 U.S. Dist. LEXIS 994 (N.D. Ill. Jan. 26, 2004)..................................10

*Dean Witter Reynolds, Inc. v. Byrd*,
　　470 U.S. 213 (1985)..........................................................................................................7, 11

*Dunston v. R.H. Love Galleries, Inc.,*
　　No. 07-5113, 2008 U.S. Dist. LEXIS 44118 (N.D. Ill. June 4, 2008)...............................11

*First Options of Chicago, Inc. v. Kaplan*,
　　514 U.S. 938 (1995)...............................................................................................................11

*Gilmer v. Interstate/Johnson Lane Corp.*,
　　500 U.S. 20 (1991)..................................................................................................................7

*Hill v. Gateway 2000*,
　　105 F.3d 1147 (7th Cir. 1997) ..............................................................................................8

*Hodsdon v. DirecTV, LLC*,
　　No. 12-2827, 2012 U.S. Dist. LEXIS 160638 (N.D. Cal. Nov. 7, 2012) .........................11

*Mitchell v. Verizon Wireless*,
　　No. 05-0511, 2006 U.S. Dist. LEXIS 15257 (N.D. Ill. Mar. 31, 2006).............................8

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
　　473 U.S. 614 (1985)........................................................................................................ 7-8

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) ........................................................................................................9, 11

*Nolde Bros., Inc. v. Local No. 358, Bakery & Confectionary Workers Union*,
    430 U.S. 243 (1977) ............................................................................................................10

*Perry v. Thomas*,
    482 U.S. 483 (1987) ..............................................................................................................7

*Pivoris v. TCF Fin. Corp.*,
    No. 07-2673, 2007 U.S. Dist. LEXIS 90562 (N.D. Ill. Dec. 7, 2007) ..........................10, 12

*Sherman v. AT&T Inc.*,
    No. 11-5857, 2012 U.S. Dist. LEXIS 40394 (N.D. Ill. Mar. 26, 2012) ..........................8, 9

*Tezky v. Woodfield Chevrolet*,
    No. 00-5718, 2001 U.S. Dist. LEXIS 24672 (N.D. Ill. Mar. 13, 2001) ...............................8

*Tory v. First Premier Bank*,
    No. 10-7326, 2011 U.S. Dist. LEXIS 110126 (N.D. Ill. Sept. 26, 2011) .........................12

**STATUTES, RULES & REGULATIONS**

9 U.S.C. §§ 1-16 ..........................................................................................................................7

9 U.S.C. § 2 ..................................................................................................................................8

9 U.S.C. § 3 .........................................................................................................................11, 12

9 U.S.C. § 4 ................................................................................................................................11

47 U.S.C. § 552 ............................................................................................................................9

**OTHER AUTHORITIES**

5C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure*
    § 1360 (3d ed. 2012) ...........................................................................................................13

Defendant Comcast Cable Communications, LLC ("Comcast") submits the following Memorandum of Law in Support of its Motion to Compel Arbitration and Stay Litigation (the "Motion").

## I. INTRODUCTION

Plaintiffs Steve Bayer ("Bayer") and Aaron Lloyd ("Lloyd") filed this action on behalf of a proposed nationwide class of former Comcast subscribers "whose personally identifiable information was retained . . . after the termination of services." Compl. ¶ 44. They assert claims for violations of the Cable Communications Policy Act, 47 U.S.C. § 551, the Illinois Cable and Video Customer Protection Law, 220 ILCS 5/22-501, the California Customer Records Act, Cal. Civ. Code § 1798.80, *et seq.*, the California Penal Code § 637.5, and for breach of implied contract. Although Comcast believes that those claims lack merit, the parties have agreed that arbitrators, not a court, should make that determination. Comcast therefore respectfully requests that this Court compel Plaintiffs to arbitrate their claims in individualized arbitration proceedings and stay this litigation pending resolution of those proceedings.

## II. BACKGROUND

**A.      Plaintiff Bayer Agreed To Arbitrate His Claims**

Bayer subscribed to Comcast's video and internet services from July 28, 2006 to July 17, 2007, at an apartment in Rolling Meadows, Illinois. *See* Decl. of Mary Kane ("Kane Decl.") ¶ 8 (attached hereto as Exhibit A). During that time period, Bayer received at least two copies of his arbitration agreement with Comcast.

First, Bayer received an arbitration agreement when he initiated his service in July 2006. At that time, it was Comcast's standard practice to give new subscribers a "Welcome Kit." *Id.*

1

¶ 10. The Welcome Kit contained the Comcast Agreement for Residential Services, which in turn contained an arbitration agreement. *See id.*

Second, Bayer received a second arbitration agreement with his November 2006 bill. Like all of his billing statements, Bayer's November 2006 billing statement was sent to him through the United States Postal Service. *See id.* ¶¶ 6, 11. At that time, it was Comcast's standard practice to provide legal notices to subscribers who received their billing statements by mail by including the notices as inserts with monthly billing statements. *See id.* ¶ 6. Consistent with that standard practice, Comcast instructed its billing vendor, CSG Systems, Inc. ("CSG") to insert a notice entitled "**Important Notice To Our Customers:** Your Local Cable Company's Policies & Practices, Notice to Customers Regarding Policies, Complaint Procedures & Dispute Resolution" with the November 2006 billing statements of subscribers who, like Bayer, subscribed to its services in Rolling Meadows, Illinois. *Id.* ¶ 11, Ex. 1. CSG's records reflect that it mailed this notice to Bayer on November 23, 2006, along with his Comcast billing statement dated November 21, 2006. *See* Decl. of Colleen Rouse ("Rouse Decl.") ¶¶ 17, 26 (attached hereto as Exhibit B). The notice stated as follows: "**NOTICE TO CUSTOMERS: THIS DOCUMENT CONTAINS IMPORTANT INFORMATION REGARDING OUR POLICIES AND PRACTICES, INCLUDING COMPLAINT PROCEDURES, ARBITRATION AND DISPUTE RESOLUTION.**" Ex. 1 to Kane Decl. Like Bayer's Welcome Kit, the notice contained an arbitration provision, the terms of which are discussed at length below. *See infra* Section II.C.; *see also* Kane Decl. ¶ 12 and Ex. 1.

After receiving the notice by mail as an insert to his November 2006 billing statement, Bayer did not terminate his service. Instead, he made a $100 payment toward this bill on

2

December 18, 2006, and subsequently continued to receive and pay for his Comcast services. *See* Kane Decl. ¶ 14 and Ex. 3.

B.  **Plaintiff Lloyd Agreed To Arbitrate His Claims**

Lloyd subscribed to Comcast's internet service at a residence in Portland, Oregon from July 2, 2008 until September 13, 2010. *See* Kane Decl. ¶ 15. Like Bayer, Lloyd received a Welcome Kit when he initiated his service on July 2, 2008. Indeed, Lloyd confirmed his receipt of the Welcome Kit when he signed a Work Order. The signature is below the following statement:

> If this Work Order relates to the initial installation of services, I acknowledge receipt of Comcast's Welcome Kit(s) which contain the Comcast subscriber agreement(s), the Comcast subscriber privacy notice(s) and other important information about the service(s). I agree to be bound by the Comcast subscriber agreement(s) which constitute the agreement(s) between Comcast and me for the service(s).

Kane Decl. ¶ 16 and Ex. 4. The Welcome Kit contained the subscriber agreement, which in turn contained an arbitration agreement with an opt-out provision, the terms of which are discussed below. *See infra* Section II.C.; *see also* Kane Decl. ¶ 17 and Ex. 5. After receiving his subscriber agreement, unlike other subscribers in Portland, Oregon, Lloyd elected not to opt out of the arbitration agreement. Rather, from July 2008 until he terminated service, Lloyd continued to receive and pay for his Comcast service. *See* Kane Decl. ¶¶ 18, 19.

C.  **The Terms of the Parties' Arbitration Agreements**

    1.  **Bayer and Lloyd's Arbitration Agreements**

The operative agreement for Bayer is contained in the notice he received by mail as an insert to his November 2006 billing statement, while the operative agreement for Lloyd is contained in the Welcome Kit he received when he initiated service in July 2008. Because those

3

agreements are substantially similar, in the interest of brevity, they are addressed together below.[1]

At all relevant times, the Comcast subscriber agreements and terms and conditions have included written arbitration agreements governing all disputes between Plaintiffs and Comcast. The arbitration agreements prominently state, under the heading "Binding Arbitration," as follows:

> If you have a Dispute (as defined below) with Comcast that cannot be resolved through the informal dispute resolution process described in this Agreement, you or Comcast may elect to arbitrate that Dispute in accordance with the terms of this Arbitration Provision rather than litigate the Dispute in court. Arbitration means you will have a fair hearing before a neutral arbitrator instead of in a court by a judge or jury.

Ex. 1 to Kane Decl. § 10.A.; *see also* Ex. 5 § 13.a. Comcast elects to arbitrate its disputes with Bayer and Lloyd. The arbitration agreements apply to any "Dispute," which they define as "any dispute, claim or controversy between you and Comcast, whether based in contract, statute, regulation, ordinance, tort including, but not limited to fraud, misrepresentation, fraudulent inducement, negligence or any other intentional tort, or any other legal or equitable theory. . . ." Ex. 1 to Kane Decl. § 10.B.; *see also* Ex. 5 § 13.b. They further state that "'Dispute' is to be given the broadest possible meaning that will be enforced," and that the agreement "shall survive the termination of your service with Comcast." *Id.* and Ex. 1 to Kane Decl. § 10.J.; *see also* Ex. 5 § 13.k. They further provide that litigation and arbitration by either party on a class-wide basis is prohibited:

> Restrictions: . . . ALL PARTIES TO THE ARBITRATION MUST BE INDIVIDUALLY NAMED. THERE SHALL BE NO RIGHT OR AUTHORITY FOR ANY CLAIMS TO BE ARBITRATED OR LITIGATED ON A CLASS-ACTION OR CONSOLIDATED BASIS OR ON BASES INVOLVING

---

[1] Comcast has included quotations from Bayer's agreement with citations to both Plaintiffs' operative agreements.

> CLAIMS BROUGHT IN A PURPORTED REPRESENTATIVE CAPACITY ON BEHALF OF THE GENERAL PUBLIC (SUCH AS A PRIVATE ATTORNEY GENERAL), OTHER SUBSCRIBERS, OR OTHER PERSONS SIMILARLY SITUATED.

Ex. 1 to Kane Decl. § 10.E.2.; *see also* Ex. 5 § 13.f.2.

The arbitration agreements also contain a number of provisions that make arbitration less costly and more flexible for subscribers, such as providing access to a convenient forum;[2] allowing subscribers to choose between arbitration services providers;[3] requiring Comcast to advance all arbitral filing fees and all of the arbitrator's costs and expenses;[4] permitting subscribers to file suit in small claims court if they prefer that means of dispute resolution;[5] not

---

[2] Ex. 1 to Kane Decl. § 10.F.; *see also* Ex. 5 § 13.g. ("Location of Arbitration: The arbitration will take place at a location, convenient to you in the area where you receive the service from us.") (emphasis in original).

[3] Ex. 1 to Kane Decl. § 10.C.; *see also* Ex. 5 § 13.d. ("Initiation of Arbitration Proceeding/Selection of Arbitrator: If you or Comcast elect to resolve your Dispute with Comcast through arbitration pursuant to this Arbitration Provision, the party initiating the arbitration proceeding may select from the following arbitration organizations. . . .") (emphasis in original).

[4] Ex. 1 to Kane Decl. § 10.G.; *see also* Ex. 5 § 13.h. ("Payment of Arbitration Fees and Costs: COMCAST WILL ADVANCE ALL ARBITRATION FILING FEES AND ARBITRATOR'S COSTS AND EXPENSES UPON YOUR WRITTEN REQUEST.") (emphasis and typography in original). If the subscriber prevails in the arbitration, the subscriber will have no obligation to reimburse Comcast for fees and costs that were advanced. *Id.* ("IF THE ARBITRATION PROCEEDING IS DETERMINED IN YOUR FAVOR, YOU WILL NOT BE REQUIRED TO REIMBURSE COMCAST FOR ANY OF THE FEES AND COSTS ADVANCED BY COMCAST.") (typography in original). And, if Comcast prevails in the arbitration, the subscriber only will be obligated to reimburse Comcast for fees and costs that were advanced if they would have been recoverable had the dispute been resolved in a court of law. *Id.* ("IF THE ARBITRATION PROCEEDING IS DECIDED IN COMCAST'S FAVOR, YOU SHALL REIMBURSE COMCAST FOR THE FEES AND COSTS ADVANCED TO YOU ONLY UP TO THE AMOUNT THAT YOU WOULD HAVE PAID TO FILE A CASE REGARDING YOUR DISPUTE WITH COMCAST IN THE STATE COURT WHERE YOU RECEIVE THE SERVICE FROM COMCAST." (emphasis and typography in original).

[5] Ex. 1 to Kane Decl. § 10.I.; *see also* Ex. 5 § 13.j. ("Exclusions from Arbitration: YOU AND COMCAST AGREE THAT THE FOLLOWING WILL NOT BE SUBJECT TO ARBITRATION: (1) ANY CLAIM FILED BY YOU OR BY COMCAST THAT IS NOT AGGREGATED WITH THE CLAIM OF ANY OTHER SUBSCRIBER AND WHOSE AMOUNT IN CONTROVERSY IS PROPERLY WITHIN THE JURISDICTION OF A COURT THAT IS LIMITED TO ADJUDICATING SMALL CLAIMS") (typography in original).

requiring arbitral awards to be kept confidential;[6] providing for an appeal and not limiting whatever right subscribers may have to appeal an arbitral award to a court of law;[7] and not prohibiting an award of attorneys' fees if one is justified by the law under which the subscriber seeks relief.[8]

### 2. Lloyd's Agreement Contains An Opt Out Provision

Lloyd's arbitration agreement also provided that he could opt out of arbitration without having any adverse effect on his service from or relationship with Comcast. It offered Lloyd the opportunity to opt out of the arbitration agreement by notifying Comcast in writing or by filling out a simple form available at www.comcast.com/arbitrationoptout:

> **Right to Opt Out.** IF YOU DO NOT WISH TO BE BOUND BY THIS ARBITRATION PROVISION, YOU MUST NOTIFY COMCAST IN WRITING WITHIN 30 DAYS OF THE DATE THAT YOU FIRST RECEIVE THIS AGREEMENT BY VISITING WWW.COMCAST.COM/ ARBITRATIONOPTOUT, OR BY MAIL TO COMCAST 1701 JOHN F. KENNEDY BLVD., PHILADELPHIA, PA 19103-2838, ATTN: LEGAL DEPARTMENT/ARBITRATION. YOUR WRITTEN NOTIFICATION MUST INCLUDE YOUR NAME, ADDRESS AND COMCAST ACCOUNT NUMBER AS WELL AS A CLEAR STATEMENT THAT YOU DO NOT WISH TO RESOLVE DISPUTES WITH COMCAST THROUGH ARBITRATION. YOUR DECISION TO OPT OUT OF THIS ARBITRATION PROVISION WILL HAVE NO ADVERSE EFFECT ON YOUR RELATIONSHIP WITH COMCAST OR THE DELIVERY OF SERVICES TO YOU BY COMCAST. IF YOU HAVE PREVIOUSLY NOTIFIED COMCAST OF YOUR DECISION TO OPT OUT OF ARBITRATION, YOU DO NOT NEED TO DO SO AGAIN.

---

[6]   *See generally id.*

[7]   Ex. 1 to Kane Decl. § 10.D.; *see also* Ex. 5 § 13.e. ("Arbitration Procedures: . . . If an award granted by the arbitrator exceeds $75,000, either party can appeal that award to a three-arbitrator panel administered by the same organization. The decision of the three-arbitrator panel shall be final and binding, except for any appellate right which exists under the FAA.") (emphasis in original).

[8]   Ex. 1 to Kane Decl. § 10.G.; *see also* Ex. 5 § 13.h. ("Payment of Arbitration Fees and Costs: . . . NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS ARBITRATION PROVISION, COMCAST WILL PAY ALL FEES AND COST WHICH IT IS REQUIRED BY LAW TO PAY.") (emphasis and typography in original).

Ex. 5 to Kane Decl. § 13.c (typography and emphasis in original).  After receiving his subscriber agreement, Lloyd elected not to opt out of the arbitration provision, while other subscribers in Oregon exercised their right to do so.  *See* Kane Decl. ¶ 19.  Rather, he continued to receive and pay for his service without objection.  *Id.*

**D.**     **Plaintiffs Have Disregarded Their Arbitration Agreements**

On October 27, 2012, notwithstanding their respective arbitration agreements with Comcast, Plaintiffs improperly sought to assert their claims in this putative class action lawsuit.  *See generally* Compl.  Because their claims fall squarely within the scope of their arbitration agreements, Comcast respectfully requests that this Court compel Plaintiffs to submit such claims to individualized arbitration proceedings.

### III.     ARGUMENT

Plaintiffs are obliged to arbitrate their disputes with Comcast pursuant to their binding arbitration agreements.

**A.**     **Plaintiffs Agreed To Resolve Disputes With Comcast Through Arbitration**

Congress has expressed a strong public policy favoring arbitration pursuant to which courts are not only encouraged, but required, to "rigorously enforce" arbitration agreements.  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985).  Congress enacted the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, to "reverse the longstanding judicial hostility to arbitration agreements" and to place them on "the same footing as other contracts."  *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991); *see also AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011) ("[C]ourts must place arbitration agreements on an equal footing with other contracts, . . . and enforce them according to their terms") (internal citation omitted); *Perry v. Thomas*, 482 U.S. 483, 489 (1987) (describing FAA as "a congressional declaration of a liberal federal policy favoring arbitration agreements"); *Mitsubishi*

7

*Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985) (noting the "emphatic federal policy in favor of arbitral dispute resolution"); *Tezky v. Woodfield Chevrolet,* No. 00-5718, 2001 U.S. Dist. LEXIS 24672, at *3 (N.D. Ill. Mar. 13, 2001) (explaining that the "FAA embodies a broad federal policy favoring arbitration."); *Mitchell v. Verizon Wireless*, No. 05-0511, 2006 U.S. Dist. LEXIS 15257 (N.D. Ill. Mar. 31, 2006).

The FAA governs arbitration agreements that are: (1) written; and (2) part of a contract involving commerce. *See* 9 U.S.C. § 2. Agreements that satisfy both of those requirements are "valid, irrevocable, and enforceable" under federal law. *Id.* Here, the parties' agreements satisfy both of those requirements, as they are in writing, and are part of transactions in interstate commerce. Indeed, they affirmatively state as much. *See* Ex. 1 to Kane Decl. § 10.D.; *see also* Ex. 5 § 13.e. ("Because the Service provided to you by Comcast concerns interstate commerce, the Federal Arbitration Act ("FAA"), not state arbitration law, shall govern the arbitrability of all Disputes."). It follows that the FAA governs the parties' arbitration agreement.

Plaintiffs are bound by their written arbitration agreements. Bayer received at least two copies of his arbitration agreement: one when he initiated service, and another with his November 2006 billing statement, which he received and made payments toward. *See supra* Section II.A. Lloyd received his arbitration agreement when he initiated service and acknowledged receipt of it when he signed his Work Order. *See supra* Section II.B. An arbitration agreement may be included in written materials provided at a time of sale or through subsequent amendment. *See, e.g., Hill v. Gateway 2000*, 105 F.3d 1147, 1148-49 (7th Cir. 1997) (enforcing terms and conditions, including an arbitration clause, provided in a product box at the time of sale); *Sherman v. AT&T Inc.*, No. 11-5857, 2012 U.S. Dist. LEXIS 40394, at *6-7 (N.D. Ill. Mar. 26, 2012) (enforcing an arbitration agreement and explaining that "vendors may enclose

8

the full legal terms within their products rather than reciting them prior to purchase."); *Boomer v. AT&T Corp.*, 309 F.3d 404, 415-17 (7th Cir. 2002) (enforcing an arbitration provision in a mailed notice under the Communications Act where subscribers continued to use the carrier's services despite a reasonable opportunity to reject the terms). After receiving their Welcome Kits with the subscriber agreement, Plaintiffs proceeded to install, receive, and pay for their services. Consistent with his original agreement and with federal law, Bayer also received a notice with the arbitration agreement as an insert to his November 2006 billing statement. *See* 47 U.S.C. § 552(c) ("A cable operator may provide notice of service and rate changes to subscribers using any reasonable written means at its sole discretion."); Ex. 1 to Kane Decl. ("We will send you a written, electronic, or other appropriate notice informing you of any changes and the Effective Date. If you find the change unacceptable, you have the right to cancel your Service. However, if you continue to receive Service after the Effective Date of the change, we will consider this your acceptance of the change."). Thus, Plaintiffs agreed to resolve their disputes with Comcast through arbitration. *See Sherman*, 2012 U.S. Dist. LEXIS 40394, at *7-8.

**B.**     **Plaintiffs' Disputes Are Within The Scope Of Their Arbitration Agreements**

In light of the strong public policy regarding arbitration, the scope of an arbitration agreement should be decided "with a healthy regard for the federal policy favoring arbitration," and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *see also AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) ("[A]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted

9

dispute. Doubts should be resolved in favor of coverage.") (internal quotations and citations omitted); *Davis v. JP Morgan Chase Bank,* No. 03-6891, 2004 U.S. Dist. LEXIS 994, at *6 (N.D. Ill. Jan. 26, 2004) (Gettleman, J.) ("Further, 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration....'") (quoting *Moses H. Cohen,* 460 U.S. at 24-25); *see also Pivoris v. TCF Fin. Corp.*, No. 07-2673, 2007 U.S. Dist. LEXIS 90562, at *7 (N.D. Ill. Dec. 7, 2007) ("Under the FAA, arbitration clauses are … to be viewed with favor as a matter of federal and public policy.").

Here, Plaintiffs' claims arise from Comcast's alleged practices of collecting certain information from current subscribers, Compl. ¶ 1 ("Comcast uses its position … to collect personal information … from tens of millions of consumers across the country"), and retaining that information after subscribers terminate service, *id.* ¶ 2 ("After consumers terminate their service with Comcast, … Comcast continues to maintain personally identifiable information"), which they claim has "deprived them of the full value of the services that they bargained and paid for." *Id.* ¶ 62. Those claims clearly fall within the scope of their arbitration agreements, which broadly apply to "any dispute, claim or controversy between" the parties, "whether based in contract, statute, regulation, ordinance, tort including, but not limited to, fraud, misrepresentation, fraudulent inducement, negligence or any other intentional tort, or any other legal or equitable theory...." Ex. 1 to Kane Decl. § 10.B.; *see also* Ex. 5 § 13.b.

The result does not change because Plaintiffs terminated their service. On the contrary, the arbitration provisions survive the termination of a subscriber's relationship with Comcast. Ex. 1 to Kane Decl. § 10.J.; *see also* Ex. 5 § 13.k. (stating that arbitration provision "shall survive the termination of your service with Comcast."); *see also Nolde Bros., Inc. v. Local No. 358, Bakery & Confectionary Workers Union*, 430 U.S. 243, 255 (1977) (holding that, where a

"dispute is over a provision of [an] expired agreement, the presumptions favoring arbitrability must be negated expressly or by clear implication."); *Hodsdon v. DirecTV, LLC*, No. 12-2827, 2012 U.S. Dist. LEXIS 160638, at *2-9 (N.D. Cal. Nov. 7, 2012) (citing *Nolde Bros.* and rejecting argument that identical claims were not within the scope of an arbitration provision even though that provision did not expressly state that it survived termination). In light of the presumption in favor of arbitration, and the plain language of the parties' agreement, there can be no dispute that Plaintiffs' claims are arbitrable.[9]

**C.     Plaintiffs Should Be Compelled To Resolve Their Claims Through Arbitration**

Where an arbitration agreement is governed by the FAA and a dispute is within its scope, a court's duty is clear: it must compel arbitration and stay further judicial proceedings. *See* 9 U.S.C. §§ 3, 4; *see also Moses H. Cone,* 460 U.S. at 22 ("[The FAA] provides two parallel devices for enforcing an arbitration agreement: a stay of litigation in any case raising a dispute referable to arbitration, 9 U.S.C. § 3, and an affirmative order to engage in arbitration, § 4."); *Dean Witter Reynolds*, 470 U.S. at 218 ("By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.") (emphasis in original); *see also Corrigan v. Domestic Linen Supply Co.,* No. 12-0575, 2012 U.S. Dist. LEXIS 100961, at *5 (N.D. Ill. July 20, 2012) (Gettleman, J.) ("The court's only role when presented with a question of arbitrability is to determine, (1) whether a valid arbitration

---

[9]     To the extent, if any, the scope of the arbitration agreements are being questioned, those questions would be for the arbitrator to decide in the first instance. *See, e.g.*, Ex. 1 to Kane Decl. § 10.B.; *see also* Ex. 5 § 13.b. (defining "Dispute" as "any dispute, claim or controversy between you and Comcast," including "the validity, enforceability or scope of this Arbitration Provision"). Parties may agree that arbitrators should decide the question of arbitrability in the first instance. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942-43 (1995); *see also Dunston v. R.H. Love Galleries, Inc.,* No. 07-5113, 2008 U.S. Dist. LEXIS 44118 (N.D. Ill. June 4, 2008).

agreement exists and (2) whether the scope of the parties dispute falls within the agreement.") (internal quotations and citations omitted). Here, valid agreements to arbitrate exist and the parties' disputes fall within the scope of those agreements. Accordingly, this Court should direct Plaintiffs to submit their claims to individual arbitration proceedings pursuant to the terms of their agreements.[10]

### D. This Action Should Be Stayed Pending Arbitration

Section 3 of the FAA provides that, in any lawsuit "referable to arbitration," the Court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. Because the parties have binding arbitration agreements that apply to the claims set forth in Plaintiffs' Complaint, the Court should not only direct the parties to arbitration but also stay this action pending the outcome of that arbitration. *See id.*; *see also Corrigan*, 2012 U.S. Dist. LEXIS 100961, at *13-14 ("Courts should await the outcome of arbitration before dismissing a suit to save the parties the burden of additional litigation in the event that the arbitrator does not resolve all of the issues of the parties. Additionally, the power to compel arbitration comes from Section 3 of the FAA, which directs courts to stay proceedings that have been referred to arbitration until arbitration has been completed."); *Pivoris,* 2007 U.S. Dist. LEXIS 90562, at *8 ("The [FAA] therefore directs federal courts to stay legal proceedings when a particular dispute is found to be subject to

---

[10] Any argument that the class action waivers in the parties' arbitration agreements are unenforceable has been foreclosed by the United States Supreme Court decision in *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011) that held that the FAA preempts state laws that invalidate class action waivers in consumer arbitration contracts. *See id.* at 1748; *see also Tory v. First Premier Bank*, No. 10-7326, 2011 U.S. Dist. LEXIS 110126, at *7-8 (N.D. Ill. Sept. 26, 2011) ("[T]he arbitration provision in the Agreement cannot be found unconscionable simply on the basis that it requires individual arbitration and bars litigating or arbitrating as a class."); *Clemins v. GE Money Bank,* No. 11-00210, 2012 U.S. Dist. LEXIS 165603, at *15 (E.D. Wis. Nov. 20, 2012) ("[S]tate laws striking class-action waivers from arbitration agreements on unconscionability grounds are preempted by the FAA.").

arbitration under a contract or agreement.").[11]

## IV. CONCLUSION

For the foregoing reasons, Comcast respectfully requests that the Court stay this action in its entirety and direct Plaintiffs to submit their claims to binding arbitration on an individualized basis pursuant to the terms of their written arbitration agreements with Comcast.

Dated: January 9, 2013

Respectfully submitted,

/s/ Gordon B. Nash
Gordon B. Nash, Jr. (ARDC No. 201799)
Gordon.Nash@dbr.com
Chancé L. Cooper (ARDC No. 6292598)
Chance.Cooper@dbr.com
**Drinker Biddle &Reath LLP**
191 North Wacker Drive, Suite 3700
Chicago, IL 60606-1698
Tel:  (312) 569-1000
Fax:  (312) 569-3000

Seamus C. Duffy
Seamus.Duffy@dbr.com
Michael W. McTigue, Jr.
Michael.McTigue@dbr.com
Michael P. Daly
Michael.Daly@dbr.com
Meredith C. Slawe
Meredith.Slawe@dbr.com
**Drinker Biddle &Reath LLP**
One Logan Square, Suite 2000
Philadelphia, PA  19103-6996
Tel:  (215) 988-2700
Fax:  (215) 988-2757

*Counsel for Defendant*
*Comcast Cable Communications, LLC*

---

[11] Comcast respectfully requests that this Court enter an Order staying all proceedings in this action pending a ruling on this Motion including, but not limited to, the deadline for Comcast to move, answer, or otherwise respond to Plaintiffs' complaint. *See* 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1360 (3d ed. 2012) (noting that judicial efficiency is promoted by a stay of proceedings in cases where "remitting the matter to arbitration is appropriate.").

13