# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| STEVE BAYER and AARON LLOYD, on behalf of themselves and all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 12-CV-08618 |
| v. | ) ) | Honorable Robert W. Gettleman |
| COMCAST CABLE COMMUNICATIONS, LLC, | ) ) ) | Magistrate Judge Schenkier |
| Defendant. | ) | |

## PLAINTIFFS' OPPOSITION TO
## DEFENDANT'S MOTION TO COMPEL ARBITRATION

Joseph J. Siprut
*jsiprut@siprut.com*
Aleksandra M. S. Vold
*avold@siprut.com*
Gregg M. Barbakoff
*gbarbakoff@siprut.com*
**SIPRUT** PC
17 North State Street
Suite 1600
Chicago, Illinois 60602
312.236.0000
Fax: 312.948.9196

# TABLE OF CONTENTS

INTRODUCTION..................................................................................................................1

FACTUAL BACKGROUND................................................................................................2

ARGUMENT.......................................................................................................................3

I.      CABLE ACT CLAIMS ARE EXCLUDED FROM THE ARBITRATION
PROVISION................................................................................................................4

      A.  Comcast has Failed to Overcome the Presumption that the Court Should
Determine Issues of Arbitrability ............................................................................4

      B.  The Arbitration Provision Excludes Cable Act Claims ...........................................6

          1.  Basic Rules of Contractual Interpretation Further Establish that the Parties
Intended to Exclude Cable Act Claims from Arbitration ...................................9

II.     COMCAST CANNOT ENFORCE THE ARBITRATION PROVISION AGAINST
PLAINTIFF BAYER BECAUSE IT IS UNCONSCIONABLE UNDER ILLINOIS
LAW..........................................................................................................................12

      A.  The Arbitration Agreement is Procedurally Unconscionable ..............................12

      B. The Arbitration Provision is Substantively Unconscionable ..................................13

CONCLUSION ..................................................................................................................15

# TABLE OF AUTHORITIES

## United States Supreme Court Cases

*AT&T Technologies, Inc. v. Communications Workers of Am.,*
475 U.S. 643 (1986) ..................................................................................................6

*First Options of Chicago, Inc. v. Kaplan,*
514 U.S. 938 (1995) ...............................................................................................5, 6

*Howsam v. Dean Witter Reynolds, Inc.,*
537 U.S. 79 (2002) ..................................................................................................3, 4

*Rent-A-Ctr., W., Inc. v. Jackson,*
130 S. Ct. 2772 (2010) ........................................................................................4, 5, 6

*Stolt-Nielsen S.A. v. Animal Feeds Int'l Corp.,*
130 S. Ct. 1758, 1763 (2010) ....................................................................................3

*United Steelworkers of America v. Warrior & Gulf Nav. Co.,*
363 U.S. 574 (1960) ...............................................................................................3, 6

## United States Circuit Court of Appeals Cases

*Cape Flattery Ltd. v. Titan Mar., LLC,*
647 F.3d 914 (9th Cir. 2011) ....................................................................................5

*Employers Ins. Co. of Wausau v. Century Indem. Co.,*
443 F.3d 573 (7th Cir. 2006) ....................................................................................4

*Int'l Ass'n of Machinists & Aerospace Workers, Dist. No. 10 v. Waukesha Engine Div., Dresser Indus., Inc.,*
17 F.3d 196 (7th Cir. 1994) ...................................................................................7, 9

*Int'l Broth. of Elec. Workers, Local 21 v. Illinois Bell Tel. Co.,*
491 F.3d 685 (7th Cir. 2007) ....................................................................................3

*Kim v. Carter's Inc.,*
598 F.3d 362 (7th Cir. 2010) ........................................................................9, 10, 11

*Local 744, Int'l Broth. of Teamsters v. Hinckley & Schmitt, Inc.,*
76 F.3d 162 (7th Cir. 1996) ......................................................................................5

*Miller v. Flume,*
139 F.3d 1130 (7th Cir. 1998) ...............................................................................5, 6

*Momot v. Mastro,*
652 F.3d 982 (9th Cir. 2011) .................................................................................4

*Pokorny v. Quixtar, Inc.,*
601 F.3d 987 (9th Cir. 2010) ...............................................................................14

*Samson v. NAMA Holdings, LLC,*
637 F.3d 915 (9th Cir. 2011) .................................................................................3

*Taracorp, Inc. v. NL Indus., Inc.,*
73 F.3d 738 (7th Cir. 1996) .................................................................................11

*United Steelworkers of Am., AFL-CIO-CLC v. Commonwealth Aluminum Corp.,*
162 F.3d 447 (6th Cir. 1998) .............................................................................7, 9

*Young v. Verizon's Bell Atl. Cash Balance Plan,*
 615 F.3d 808 (7th Cir. 2010) ................................................................................9

**United States District Court Cases**

*Bankcard Am., Inc. v. Universal Bancard Sys., Inc.,*
904 F. Supp. 753 (N.D. Ill. 1995) .........................................................................7

*Clemins v. GE Money Bank,*
2012 WL 5868659 (E.D. Wis. Nov. 20, 2012) ...................................................13

*Estep v. World Fin. Corp. of Illinois,*
735 F. Supp. 2d 1028 (C.D. Ill. 2010) ................................................................15

*In re Herrington,*
374 B.R. 133 (Bankr. E.D. Pa. 2007) ..................................................................14

*Lau v. Mercedes-Benz USA, LLC,*
2012 WL 370557 (N.D. Cal. Jan. 31, 2012) .......................................................14

*Newton v. Am. Debt Services, Inc.,*
854 F. Supp. 2d 712 (N.D. Cal. 2012) ................................................................14

*O'Quinn v. Comcast Corp.,*
2010 WL 4932665 (N.D. Ill. Nov. 29, 2010). .....................................................14

*Smith v. Americredit Fin. Servs., Inc.,*
2012 WL 834784 (S.D. Cal. Mar.12, 2012) ........................................................13

*Trompeter v. Ally Fin., Inc.,*
2012 WL 1980894 (N.D. Cal. June 1, 2012) .......................................................14

## State Court Cases

*Becker v. N.'s Restaurants, Inc.,*
967 P.2d 1246 (Or. Dist. Ct. App. 1998) ........................................................................................11

*Bishop v. We Care Hair Dev. Corp.,*
738 N.E.2d 610 (Ill. Dist. Ct. App. 2000) ......................................................................................15

*Hubbert v. Dell Corp.,*
835 N.E.2d 113 (Ill. Dist. Ct. App. 2005) ......................................................................................12

*Kel Homes, LLC v. Burris,*
933 So. 2d 699 (Fla. Dist. Ct. App. 2006) ....................................................................................8, 9

*Kinkel v. Cingular Wireless LLC,*
857 N.E.2d 250 (Ill. 2006) ...............................................................................................12, 13, 15

*Razor v. Hyundai Motor America,*
854 N.E.2d 607 (Ill. 2006) ...........................................................................................................12

## Statutes and Rules

47 U.S.C. § 551 .............................................................................................................................1, 2

Fed. R. Civ. P. 10 .............................................................................................................................7

## INTRODUCTION

This case challenges Comcast's long-standing practice of retaining sensitive and personal customer information indefinitely, long after consumers have cancelled their accounts. This behavior concerned Congress enough that federal legislation has been enacted specifically to prohibit it: the Cable Policy Protection Act ("Cable Act") requires that cable operators like Comcast destroy such personal information "if the information is no longer necessary for the purpose for which it was collected." 47 U.S.C. §551(e). As such, Plaintiffs allege that when they cancelled their Comcast subscriptions, retention of their personal information was no longer necessary for the purpose collected and should have been destroyed.

Comcast seeks to continue its indefinite retention policy and dodge the issues of the case entirely by hiding behind an Arbitration Provision in its Subscription Agreement. But Comcast's Motion to Compel Arbitration fails for two main reasons. ***First***, Comcast's Privacy Policy establishes a separate dispute resolution procedure for addressing Cable Act violations, which expressly provides Comcast customers with a contractual right to pursue Cable Act claims in a civil lawsuit. Thus, Plaintiffs' Cable Act claims necessarily fall outside the scope of the Arbitration Provision.

***Second***, even if the Arbitration Provision *does* encompass Plaintiffs' Cable Act claims, it still could not be enforced against Plaintiff Bayer, as it is procedurally and substantively unconscionable under Illinois law. The Arbitration Provision is an obvious contract of adhesion, and contains various exclusions that benefit only Comcast. The Provision also contains a fee-shifting clause that allows Comcast to recover its attorneys' fees and costs following the successful appeal of an arbitration award in the customer's favor. A contract so wrought with procedural and substantive unconscionability cannot properly be enforced, as numerous cases have made abundantly clear.

## **FACTUAL BACKGROUND**

*The Cable Act*

In 1984, Congress passed the Cable Communications Policy Act ("the Cable Act") in order to establish a national policy concerning cable communications and their operators. (Compl. ¶ 11.) Congress's main objective in establishing this policy was to combat the numerous privacy issues implicated by the collection and retention of cable subscribers' sensitive personal information. (Compl. ¶ 1.)

The Cable Act affords consumers significant protection with respect to the collection, maintenance, and disclosure of personally identifiable information ("PII") provided by the subscriber to the cable operator. (Compl. ¶ 15.) The Cable Act requires cable operators to provide annual notice setting forth the "nature of personally identifiable information collected;" "the nature, purpose, and frequency of any disclosure" of that information; the "period during which such information will be maintained;" "the times and place at which the subscriber may have access to such information;" and the limitations imposed on the cable operator by this provision of the Cable Act. (Compl. ¶ 16 (*quoting* the Cable Act, 47 U.S.C. § 551(a)(1).)

In addition, the Cable Act requires cable operators to destroy the PII of former subscribers once it is no longer necessary "for the purpose for which it was collected" and there are no outstanding requests or orders for such information. (Compl. ¶ 17 (*quoting* 47 U.S.C. § 551(e).) Although the Cable Act does not provide a definition for PII, courts have concluded that it broadly encompasses "specific information about the subscriber, or a list of names and addresses on which the subscriber is included." (Compl. ¶ 18.)

*Comcast's Collection of PII*

Comcast, a provider of cable television services, requires that subscribers provide PII to Comcast in order to receive cable service, including social security numbers and/or driver's

license numbers, street addresses, phone numbers, and credit card numbers. (Compl. ¶ 20.) Once Comcast obtains that information, it is maintained on a digital record system with every subscriber's personal information, adding to each consumer's file as Comcast acquires more information. (Compl. ¶ 21.) Comcast purports to maintain customer PII as long as it is "necessary for the purpose for which it was collected or to satisfy legal requirements," which "include business, legal or tax purposes." (Compl. ¶ 22.)

**_Comcast's Violation of the Cable Act_**

Notwithstanding the language of its Privacy Policy, Comcast simply retains its customers' PII indefinitely. (Compl. ¶ 23.) Comcast's practice of retaining customer PII indefinitely violates the Cable Act, which requires cable operators to destroy their former subscribers' PII once the information is no longer needed for the purpose for which it was collected. (Compl. ¶ 24.) Moreover, Comcast also fails to provide the Cable Act-mandated privacy notices to customers whose accounts have been closed, but whose information is still retained by Comcast. (Compl. ¶ 25.)

## ARGUMENT

It is well-settled that arbitration "is a matter of contract," _Howsam v. Dean Witter Reynolds, Inc._, 537 U.S. 79, 83 (2002) (_quoting United Steelworkers of America v. Warrior & Gulf Nav. Co.,_ 363 U.S. 574, 582 (1960)), and thus parties are free to "limit the issues" subject to arbitration. _Stolt-Nielsen S.A. v. Animal Feeds Int'l Corp._, 130 S. Ct. 1758, 1763 (2010). Given this, a party _cannot_ be required to submit to arbitration "any dispute which [it] has not agreed so to submit." _Howsam_, 537 U.S. at 83 (emphasis added); _accord Int'l Broth. of Elec. Workers, Local 21 v. Illinois Bell Tel. Co._, 491 F.3d 685, 687 (7th Cir. 2007); _Samson v. NAMA Holdings, LLC_, 637 F.3d 915, 923 (9th Cir. 2011).

I.    **CABLE ACT CLAIMS ARE EXCLUDED FROM THE ARBITRATION PROVISION.**

Comcast argues that all of Plaintiffs' claims are encompassed by the Arbitration Provision, and that any dispute about the scope of the Arbitration Provision — *i.e.* questions regarding "arbitrability" — should be decided by the arbitrator. Neither argument is correct. ***First***, far from the "clear and unmistakable evidence" required to demonstrate that the parties agreed to submit those questions to the arbitrator, *Rent-A-Ctr., W., Inc. v. Jackson*, 130 S. Ct. 2772, 2783 (2010), the Arbitration Provision contains express language that the *court* should determine the scope of the Arbitration Provision.

***Second***, the Privacy Policy creates a separate dispute resolution procedure that allows customers to enforce the limitations of the Cable Act through a civil lawsuit, thus establishing that the Cable Act claims at issue here are excluded from the Arbitration Provision. Each point is addressed directly below.

A.    **Comcast has Failed to Overcome the Presumption that the Court Should Determine Issues of Arbitrability.**

The court must presumptively decide the two gateway issues of arbitrability, which are: (1) whether there is a valid, enforceable agreement to arbitrate; and (2) whether the dispute falls within the scope of the arbitration agreement. *Howsam*, 537 U.S. at 84 ("A gateway dispute about whether the parties are bound by a given arbitration clause raises a 'question of arbitrability' for a court to decide. . . . Similarly, a disagreement about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy is for the court."); *accord Employers Ins. Co. of Wausau v. Century Indem. Co.*, 443 F.3d 573, 576 (7th Cir. 2006); *Momot v. Mastro*, 652 F.3d 982, 987 (9th Cir. 2011).

Although the parties may overcome this presumption by agreement, the Supreme Court has imposed a rigorous standard for determining whether such an agreement exists. *Rent-a-*

*Center*, 130 S. Ct. at 2783. Under this standard, any "silence or ambiguity" about whether the court or the arbitrator should determine the validity, scope, or enforceability of an arbitration provision must be resolved in favor of the court retaining the decision-making power. *Id.*; *accord Local 744, Int'l Broth. of Teamsters v. Hinckley & Schmitt, Inc.*, 76 F.3d 162, 165 (7th Cir. 1996) (*quoting First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944-45 (1995)) ("The law treats silence or ambiguity about the question 'who should decide arbitrability' differently from the way the question of 'whether a particular merits-related dispute is arbitrable . . .' [] for in respect to this latter question the law reverses the presumption [in favor of arbitration].") Thus, the Supreme Court instructs that a court "should not assume that the parties agreed to arbitrate arbitrability unless there is *'clear and unmistakable'* evidence that they did so." *Miller v. Flume*, 139 F.3d 1130, 1133 (7th Cir. 1998) (emphasis added) (*quoting First Options*, 514 U.S. at 944); *accord Cape Flattery Ltd. v. Titan Mar., LLC*, 647 F.3d 914, 921 (9th Cir. 2011) *cert. denied*, 132 S. Ct. 1862 (2012).

The situation here does not meet this lofty standard. Comcast claims that the Arbitration Provision defines "Dispute" as any controversy between the parties, including the "validity, enforceability, or scope of this Arbitration Provision." (Docket No. 13 at 11 n.9; *see* Docket No.13-2 at §10(B) (providing definition of dispute); Docket No. 14-5 at §13(b) (same).) But what Comcast ignores is that other portions of the Arbitration Provision demonstrate that the parties intended for a *court* to determine the gateway issues of arbitrability. (Docket No. 13-2 at §10(H) ("[I]f a claim is brought in a Dispute *that is found by a court to be excluded from the scope of this Arbitration Provision*, you and Comcast have each agreed to waive, to the fullest extent allowed by law, any trial by jury.") (emphasis added); Docket no. 14-5 at § 13(i) (same).) Given this conflicting language, the Arbitration Provision falls well short of providing any "clear and unmistakable evidence" that the parties agreed to arbitrate arbitrability. *First Options*, 514

U.S. at 944. As a result, Plaintiffs cannot be required to submit those issues to the arbitrator in the first instance. *Id.*; *see Miller*, 139 F.3d at 1134 ("Even if it would not do violence to the language of section 35 to conclude that arbitrability may also be resolved by the arbitrators, this is not the kind of clear and unmistakable language that *First Options* requires.").

Thus, while Comcast argues that this Court cannot determine the scope of the Arbitration Provision, its position is directly contrary to Supreme Court precedent. Because the Arbitration Provision is ambiguous (at best) as to whether the parties agreed on *who* should determine the gateway issues of arbitrability, any doubts must be resolved in favor of this Court retaining jurisdiction. *Rent-a-Center*, 130 S. Ct. at 2783.

### B. The Arbitration Provision Excludes Cable Act Claims.

Comcast argues that "there can be no dispute that Plaintiffs' claims are arbitrable." (Docket No. 13 at 11.) Wrong. Comcast's own Privacy Policy demonstrates that Cable Act claims (such as those asserted here) are not subject to the Arbitration Provision. The Supreme Court has held that "in the absence of any express provision excluding a particular claim, only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail. *AT&T Technologies, Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650 (1986) (*quoting United Steelworkers*, 363 U.S. at 584-85). That is exactly the case here. The Privacy Policy provides a separate dispute resolution procedure that applies solely to Cable Act claims.

The Privacy Policy is expressly incorporated by reference into Plaintiffs' Subscription Agreements and is therefore part of the contract. (*See* Docket No. 14-5 at § 14(a)[1] (incorporating

---

[1] Although Plaintiff Bayer's Subscription Agreement does not expressly reference the Privacy Policy, the Subscription Agreement provides that "[o]ther information relating to the products and services which we offer . . . are provided [to] you at installation and/or from time to time during the year under separate cover." (Docket No. 13-2 at preamble.) The Privacy Policy also provides that Comcast "will continue to review our Policies and Practices as part of our commitment to continually review and improve the quality of Services we provide. We will send you a written, electronic, or appropriate notice of any changes and the Effective date." (*Id.*) Accordingly, these express statements are sufficient to incorporate the Privacy Policy into Bayer's Subscription Agreement by reference. Should Comcast

Privacy Policy by reference.) (A true and correct copy of the Privacy Policy is attached hereto as Exhibit A.) The Privacy Policy details Comcast's obligations under the Cable Act with respect to the collection, retention, use, and disclosure of its subscribers' PII. More importantly, the Privacy Policy contains its own dispute resolution procedure for Cable Act violations, which provides:

> **What can I do if I think my privacy rights have been violated?**
>
> If you believe that you have been aggrieved by any act of ours in violation of the Cable Act, we encourage you to contact us directly as described below in "How do I contact Comcast?" in order to resolve your question or concern. ***You may also enforce the limitations imposed on us by the Cable Act as applicable with respect to your personally identifiable information through a civil lawsuit seeking damages, attorneys' fees, and litigation costs.*** [Ex. A at 8; emphasis added.]

Because the Privacy Policy contains a separate dispute resolution procedure for Cable Act claims, it thus provides "forceful evidence" that the parties intended to exclude those claims from the scope of the Arbitration Provision.

The Seventh Circuit has found exclusions to (otherwise broad) arbitration provisions where, as here, the contract incorporates a separate dispute resolution procedure for specific claims. *See, e.g.*, *Int'l Ass'n of Machinists & Aerospace Workers, Dist. No. 10 v. Waukesha Engine Div., Dresser Indus., Inc.*, 17 F.3d 196, 198 (7th Cir. 1994) (health insurance plan incorporated by reference into collective bargaining agreement created exclusion from arbitration because "[t]he Plan gives [employees] the right to seek review of Aetna's decision in federal or state court. . . . the fact that the Plan expressly provides for an alternative review procedure indicates that the parties did not intend to arbitrate disputes concerning the denial of benefits."); *see also United Steelworkers of Am., AFL-CIO-CLC v. Commonwealth Aluminum Corp.*, 162

---

dispute this assertion, Plaintiff respectfully requests leave to conduct arbitration-related discovery to resolve the issue. In any event, this Court can properly consider the Privacy Policy because it is incorporated into Plaintiffs' Complaint by reference (Compl. ¶ 22), and thus is part of the pleadings. Fed. R. Civ. P. 10(c); *see Bankcard Am., Inc. v. Universal Bancard Sys., Inc.*, 904 F. Supp. 753, 757 (N.D. Ill. 1995) ("A complaint is deemed to include documents attached to it as an exhibit or documents incorporated in it by reference.").

F.3d 447, 451 (6th Cir. 1998) ("We find that the incorporation of the claims review procedure, which expressly provides that the decisions of the Plan Administrator will be final and binding on all interested parties, expresses an intention to exclude from arbitration all benefit disputes which are within the Administrator's authority.").

Moreover, although *Kel Homes, LLC v. Burris* is a Florida state court decision, its reasoning is precisely on point. 933 So. 2d 699, 703-04 (Fla. Dist. Ct. App. 2006). That case involved a broad arbitration clause contained in a real estate contract, which provided "[i]t is hereby agreed that *any and all claims, disputes and controversies by or between the Buyer and Seller arising from or related to the subject home identified herein . . . shall be submitted to binding arbitration . . . ." Id.* at 702 (emphasis in original). A separate section of the contract pertaining solely to defaults, however, provided that "[i]n the event of Seller's default, the buyer's sole and exclusive remedy shall be limited to either a suit for specific performance (but not monetary damages) or the return of the deposit." *Id.* When the buyer sued for specific performance, the seller argued that the broad arbitration provision encompassed the buyer's claim. *Id.* at 702.

Notwithstanding the presumption in favor of arbitration, the court disagreed for three reasons. First, the court recognized that contractual terms are presumed to have been used in their "ordinary and customary meaning," and explained that the term "suit" is generally understood to reference litigation, rather than arbitration. *Id.* Second, the court noted that "the use of the term 'arbitration' in paragraph 24 and the use of the different term 'suit' in paragraph 28 is strong evidence that two different meanings were intended." *Id.* at 703. Third, the court explained that "it is a general principle of contract interpretation that a specific provision dealing with a particular subject will control over a different provision dealing only generally with that same subject." Because the plaintiff sought specific performance, the court held that "the specific

provision of paragraph 28 which allows for a 'suit' in the case of [the seller's] default controls over the more general dispute resolution provision of paragraph 24 that requires arbitration." *Id.* at 704.

The same is true here. The Privacy Policy provides a specific dispute resolution procedure that applies solely to Cable Act claims, under which Plaintiffs are contractually entitled to litigate — rather than arbitrate — their rights under the Cable Act. Just as the real estate contract in *Kel Homes* expressly stated that the buyer could file "suit" in the event of default, here, the Privacy Policy expressly states that Plaintiffs can file a "lawsuit" to enforce the limitations of the Cable Act. *Kel Homes*, 933 So. 2d at 702. And unlike the contract in *Kel Homes*, the language of the Privacy Policy leaves no room for disagreement — the term "lawsuit" cannot possibly be interpreted as referencing arbitration. *Id.*; *see Kim v. Carter's Inc.*, 598 F.3d 362, 364 (7th Cir. 2010) ("Courts interpret contracts with the goal of effectuating the parties' intent, giving contract terms their plain and ordinary meaning.").

Further, the fact that the Privacy Policy pertains solely to claims arising from Cable Act violations dispels any presumption in favor of arbitration created by Comcast's broad Arbitration Provision. Under settled rules of contractual interpretation, the specific dispute resolution procedure applicable that allows Plaintiffs to litigate Cable Act claims controls over the "more general dispute resolution provision" that Comcast seeks to enforce. *Kel Homes*, 933 So. 2d at 704.; *Waukesha*, 17 F.3d at 198; *Commonwealth Aluminum Corp.*, 162 F.3d at 451; *see also Young v. Verizon's Bell Atl. Cash Balance Plan*, 615 F.3d 808, 823 (7th Cir. 2010) ("[I]f both a general and a specific provision apply to the subject at hand, the specific provision controls.")

   **1.**  **Basic Rules of Contractual Interpretation Further Establish that the Parties Intended to Exclude Cable Act Claims from Arbitration.**

Comcast will likely argue that the Privacy Policy merely informs customers of their rights under the Cable Act, rather than providing a separate dispute resolution procedure for

resolving Cable Act claims. That is false. The Subscription Agreement clearly states that the customer's "***sole and exclusive remedies*** under this Agreement are as expressly set forth in this Agreement." (Docket No. 14-5 § 11(i); *see* Docket No. 13-2 at § 8 (same).) Because the Privacy Policy is the only part of the Subscription Agreement that specifically pertains to Cable Act claims, Plaintiffs have two "sole and exclusive remedies" for Cable Act Violations: they can either: (1) contact Comcast directly to resolve their disputes informally; or (2) litigate their Cable Act claims through a civil lawsuit. (Ex. A at 8.)[2] Having left Plaintiffs with no other available remedies, Comcast cannot deny that the Privacy Policy contains a specific dispute resolution procedure that applies solely to Cable Act claims. *Carter's Inc.*, 598 F.3d at 364 (terms used in a contract must be given their plain and ordinary meaning).

Comcast will also likely argue that Cable Act claims remain subject to arbitration because the Arbitration Provision provides "if there is a conflict between this Arbitration Provision and the rest of this Agreement, the Arbitration Provision shall govern." (Docket No. 13-2 at § 10(D); Docket No. 14-5 at § 13(e).) Thus, the argument goes, the discretionary nature of the Arbitration Provision means that Comcast is not *required* to compel arbitration when faced with such a lawsuit, but it nevertheless retains the option to do so.

This argument, too, is a non-starter, as the same is true for every other conceivable claim a customer could bring against Comcast. Because this interpretation would put Cable Act claims on equal footing with all other disputes, it would violate well-settled rules of contractual

---

[2] The fact that these two options are disjunctive further demonstrates that the Privacy Policy creates a separate dispute resolution for Cable Act claims, because the Arbitration Provision requires customers to resolve any general disputes informally *before* electing to file a claim in arbitration. (*See* Docket No. 14-5 at § 13(a) "If you have a Dispute . . . that cannot be resolved through the informal dispute resolution process described in this Agreement, you or Comcast may elect to arbitrate that Dispute rather than litigate the Dispute in court.") Likewise, the Arbitration Provision provides imposes a "Notice Requirement" as a condition precedent to pursuing any claim against Comcast, which expressly states that a customer is deemed to waive any potential claim unless he contacts Comcast within one year of the "occurrence of the events or facts" giving rise to a dispute. (Docket No. 14-5 at § 13(f)(1).) By contrast, the Privacy Policy does not impose any similar "Notice Requirement" on customers as a condition precedent to litigating Cable Act claims.

interpretation by rendering the Privacy Policy's dispute resolution procedure entirely meaningless. *Carter's*, 598 F.3d at 364 (Under Illinois law, "[c]ourts 'will not interpret the agreement in a way that would nullify provisions or would render them meaningless.'") (internal quotation and citation omitted); *Becker v. N.'s Restaurants, Inc.*, 967 P.2d 1246, 1251 (Or. Dist. Ct. App. 1998) ("Accordingly, we reject plaintiff's interpretation because it would force us to construe the agreement in a manner that would render the first sentence meaningless.").

Lest there be any doubt on this issue, other television providers in identical circumstances include express language in their privacy policies specifying that customers may file a "claim" to enforce the limitations of the Cable Act, subject to the dispute resolution procedures described in the arbitration provision. As the drafter of the Privacy Policy, Comcast *could* have included similar language to bring the Privacy Policy's dispute resolution procedure within the scope of the Arbitration Provision. Its failure to do so is outcome-determinative. *See Taracorp, Inc. v. NL Indus.*, Inc., 73 F.3d 738, 744 (7th Cir. 1996) ("When parties to the same contract use such different language to address parallel issues . . . it is reasonable to infer that they intend this language to mean different things.").

Thus, the Privacy Policy provides forceful evidence that the parties intended to exclude Cable Act claims from the scope of the Arbitration Provision. Put simply, Comcast decided to provide its customers with a separate dispute resolution procedure for enforcing the limitations of the Cable Act. Because that dispute resolution procedure is part of the parties' agreement, it must be honored. Accordingly, Comcast's attempt to compel arbitration of Plaintiffs' Cable Act claims must be rejected.

## II.    COMCAST CANNOT ENFORCE THE ARBITRATION PROVISION AGAINST PLAINTIFF BAYER BECAUSE IT IS UNCONSCIONABLE UNDER ILLINOIS LAW.

Even assuming that Plaintiffs' Cable Act claims are subject to the Arbitration Provision (which they are not), the Arbitration Provision still cannot be enforced against Plaintiff Bayer because it is both procedurally and substantively unconscionable under Illinois law. In Illinois, a finding of unconscionability may be based on procedural unconscionability, substantive unconscionability, or a combination of both. *Razor v. Hyundai Motor America*, 854 N.E.2d 607, 622 (Ill. 2006); *Kinkel v. Cingular Wireless LLC*, 857 N.E.2d 250, 263 (Ill. 2006) (expressly rejecting the notion that both procedural and substantive unconscionability must be found). Here, both procedural and substantive unconscionability are present in spades, and thus First American's Motion to Compel Arbitration should be denied.[3]

### A.    The Arbitration Agreement is Procedurally Unconscionable.

"Procedural unconscionability relates to the circumstances surrounding the formation of the contract," *Hubbert v. Dell Corp.*, 835 N.E.2d 113, 123 (Ill. Dist. Ct. App. 2005) and "takes into account the disparity of bargaining power between the drafter of the contract and the party claiming unconscionability." *Kinkel*, 857 N.E.2d at 264. Contracts of adhesion, although not *per se* unenforceable, are nevertheless indicative of procedural unconscionability. *Id.* at 266.

The is no serious debate that the Arbitration Provision is a contract of adhesion. Comcast, as the sole drafter of the Arbitration Provision, enjoyed a substantially superior bargaining position relative to Plaintiff Bayer and other Comcast customers. Plaintiff Bayer, for his part, had no opportunity to bargain or negotiate the provision's terms, which were offered strictly on a take-it-or-leave-it basis. *See Kinkel*, 857 N.E.2d at 265. This is sufficient to demonstrate

---

[3] Plaintiffs are not asserting that Plaintiff Lloyd's arbitration agreement is unconscionable under Oregon law. Thus, if the Court finds that the Arbitration Provision is unconscionable under Illinois law (as discussed in Section II), Comcast's Motion should be denied only as to Plaintiff Bayer's claims. If the Court finds that Plaintiffs' Cable Act claims are outside the scope of the Arbitration Provision, however, Comcast's Motion should be denied as to both named Plaintiffs.

procedural unconscionability. *Id.* Given procedural unconscionability, the presence of substantively unconscionable elements of the Provision — discussed below — collectively demonstrates that the Provision as a whole cannot be enforced.

### B. The Arbitration Provision is Substantively Unconscionable.

The Arbitration Provision is also substantively unconscionable under Illinois law. Substantive unconscionability "concerns the actual terms of the contract and examines the relative fairness of the obligations assumed." *Kinkel*, 857 N.E.2d at 267 ("Indicative of substantive unconscionability are contract terms so one-sided as to oppress or unfairly surprise an innocent party, an overall imbalance in the obligations and rights imposed by the bargain, and significant cost-price disparity.") (internal quotations and citations omitted). Comcast's Arbitration Provision easily satisfies these criteria for two reasons.

*First*, the Arbitration Provision provides that an arbitration award that exceeds $75,000 may be appealed by either party before a panel of three neutral arbitrators. (Docket No. 13-2 at §10(D).) Courts routinely hold that provisions such as these unreasonably favor the drafter because "[i]t gives [the] defendant two bites at the apple in the rare case where a customer has a significant claim, and it prevents customers from appealing awards against defendant that they think are too low." *Clemins v. GE Money Bank*, 2012 WL 5868659, at * 6 (E.D. Wis. Nov. 20, 2012) (considering provision allowing appeal of awards over $100,000). *See also Smith v. Americredit Fin. Servs., Inc.*, 2012 WL 834784, at *3 (S.D. Cal. Mar.12, 2012) (provision limiting appeals to awards over $100,000 supported finding of substantive unconscionability).

The Arbitration Provision further provides that "the prevailing party in the appeal shall be entitled to recover all reasonable attorney's fees and costs incurred in that appeal." (Docket No. 13-2 at §10(G).) The daunting prospect of paying all appellate costs *alone* is enough to discourage any consumer from arbitrating claims against Comcast. For instance, the AAA (one

of the three arbitration bodies specified in the Arbitration Provision) charges over *$4,500* for the filing fee, processing fee, and final fee for any claim submitted to panel of three arbitrators. When confronted with identical provisions contained in an arbitration agreement, courts have routinely held that the "imposition of substantial fees and costs in pursuit of an appeal under the arbitration agreement contributes to a finding of substantive unconscionability." *E.g.*, *Trompeter v. Ally Fin., Inc.*, 2012 WL 1980894, at *7 (N.D. Cal. June 1, 2012); *see Lau v. Mercedes-Benz USA, LLC*, 2012 WL 370557, at *2 (N.D. Cal. Jan. 31, 2012) ("If a consumer had difficulty advancing costs in the initial hearing, then he or she would have an even more difficult time advancing the costs for appeal. Such a provision places an unduly harsh burden on consumers and further discourages them from enforcing their rights.").

Likewise, the prospect of paying all attorneys' fees incurred by *Comcast* in a successful appeal is certainly oppressive enough to support a finding of substantive unconscionability.[4] *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 1004 (9th Cir. 2010) ("We agree that because the fee-shifting clause puts IBOs who demand arbitration at risk of incurring greater costs than they would bear if they were to litigate their claims in federal court, the district court properly held that the clause is substantively unconscionable."); *Newton v. Am. Debt Services, Inc.*, 854 F. Supp. 2d 712, 725 (N.D. Cal. 2012) ("By permitting exposure to Defendant's attorney's fees and litigation costs, the Agreements may deter customers with legitimate disputes from bringing suit in contravention of their statutory rights."); *In re Herrington*, 374 B.R. 133, 145-46 (Bankr. E.D. Pa. 2007) ("The agreement as written, and as yet uninterpreted by an arbitrator, could force Harris to bear the risk that she will be required to pay all arbitration costs. That risk is unconscionable in that it is a deterrent to the vindication of her statutory rights.").

_____

[4] Plaintiff recognizes that another court in this District examined Comcast's Arbitration Provision and found that the section regarding appeals did not support a finding of substantive unconscionability. *O'Quinn v. Comcast Corp.*, 2010 WL 4932665, at * 7 (N.D. Ill. Nov. 29, 2010). However, the *O'Quinn* court did not examine whether Comcast's ability to shift its attorneys' fees *and* the costs of appeal onto the customer rendered the Arbitration Provision substantively unconscionable. *Id.*

*Second*, the Arbitration Provision also contains numerous clauses and exclusions that benefit only Comcast, and thus creates an "overall imbalance in the obligations and rights imposed by the bargain." *Kinkel*, 223 Ill.2d at 28. The Arbitration Provision specifically excludes claims regarding the "validity of any party's intellectual property rights" and "any dispute related to or arising from . . . unauthorized use or receipt of service," (Docket No. 13-2 at § 10(I), which only Comcast would ever be in a position to bring. In short, these exclusions allow Comcast to protect *its* interests without resorting to binding arbitration. The same is not true customers such as Plaintiff Bayer, who can only protect their interests through arbitration — at the risk of paying Comcast's attorneys' fees *and* appellate costs.[5]

As shown above, the Arbitration Provision is entirely one-sided in Comcast's favor — it provides numerous carve-outs that benefit only Comcast, and imposes a fee-shifting provision designed to discourage consumers from vindicating their rights through arbitration. Accordingly, this one-sidedness renders the Arbitration Provision substantively unconscionable.

## CONCLUSION

Comcast has failed to produce an Arbitration Provision that encompasses Plaintiffs' Cable Act claims, and thus Comcast's Motion to Compel Arbitration should be denied with respect to Plaintiffs' Cable Act claims. In the alternative, the Arbitration Provision is both substantively and procedurally unconscionable under Illinois law, and thus Comcast's Motion to Compel Arbitration should be denied with respect to Plaintiff Bayer's claims.

---

[5]   To be clear, Illinois courts have held that one-sided arbitration provisions are not invalid for lack of mutuality so long as other consideration is present.  *E.g. Bishop v. We Care Hair Dev. Corp.*, 738 N.E.2d 610, 622 (Ill. Dist. Ct. App. 2000). However, as the Northern District of Illinois recently explained, that rule is irrelevant to the unconscionability analysis. *Estep v. World Fin. Corp. of Illinois*, 735 F. Supp. 2d 1028, 1033 (C.D. Ill. 2010) (distinguishing rule mentioned above and holding "the Court must apply the definition of unconscionability set out in *Kinkel* . . . . As the *Kinkel* Court noted, indicia of unconscionability include contract terms so one-sided as to oppress or unfairly surprise an innocent party, an overall imbalance in the obligations and rights imposed by the bargain, and significant cost-price disparity.")

Dated:  February 12, 2013

Respectfully submitted,

STEVE BAYER and AARON LLOYD, on
behalf of themselves and all others similarly
situated,

By: _____
    One of the Attorneys for Plaintiffs
    And the Proposed Putative Class

Joseph J. Siprut
*jsiprut@siprut.com*
Aleksandra M. S. Vold
*avold@siprut.com*
Gregg M. Barbakoff
*gbarbakoff@siprut.com*
**SIPRUT** PC
17 North State Street
Suite 1600
Chicago, Illinois 60602
312.236.0000
Fax: 312.948.9196

### CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that a true and correct copy of the foregoing **Plaintiffs' Opposition to Defendant's Motion to Compel Arbitration** was filed this 12th day of February, 2013, via the electronic filing system of the Northern District of Illinois, which will automatically serve counsel of record.

_____

Joseph J. Siprut