IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| STEVE BAYER and AARON LLOYD, on behalf of themselves and others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | No. 12 C 8618 |
| v. | ) ) | Judge Robert W. Gettleman |
| COMCAST CABLE COMMUNICATIONS, LLC, | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Steve Bayer and Aaron Lloyd (collectively, "plaintiffs"), individually and on behalf of all others similarly situated, brought a collective and putative class action complaint against defendant Comcast Corporation, alleging violations of § 551(a) and (e) of the Cable Communication Policy Act ("CCPA"), 47 U.S.C. § 551, *et seq.*, (Counts I & II), breach of implied contract (Count III), violation of the Illinois Cable and Video Customer Protection Law ("Illinois Cable Act") (Count IV), violation of the California Customer Records Act ("CCRA"), Cal. Civ. Code § 1798.80, *et seq.*, (Count V), and violation of Cal. Penal Code § 637.5 (Count VI). Defendant has moved, pursuant to Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, to compel arbitration and stay litigation. Plaintiffs oppose to the motion. For the reasons stated below, defendant's motion is granted.

## BACKGROUND

Defendant is a corporation headquartered in Philadelphia, Pennsylvania, and is the nation's largest cable television operator, serving over twenty million customers. Defendant provides cable and other services to customers in thirty-nine states, including Illinois.

Plaintiff Steve Bayer ("Bayer") is a citizen of Illinois who subscribed to defendant's video and internet services from July 28, 2006, to July 17, 2007, at an apartment in Rolling Meadows, Illinois. According to defendant, Bayer received at least two copies of an arbitration agreement with defendant during that time period. He received his first copy in defendant's standard Welcome Kit when he initiated his service in July 2006, and his second copy in a notice inserted in his November 2006 bill that was mailed to him. Bayer does not deny that he received these agreements.

Plaintiff Aaron Lloyd ("Lloyd") is a citizen of the California who subscribed to defendant's internet service at a residence in Portland, Oregon from July 2, 2008, until September 13, 2010. Like Bayer, Lloyd received a Welcome Kit when he initiated his service on July 2, 2008. The Welcome Kit contained the subscriber agreement, which contained an arbitration agreement with an opt-out provision. After receiving his subscriber agreement, unlike some other subscribers in Portland, Oregon, Lloyd elected not to opt out of the arbitration agreement. Lloyd does not dispute that he received this agreement.

Bayer's and Lloyd's arbitration agreements are substantially similar and state:

> If you have a Dispute (as defined below) with Comcast that cannot be resolved through the informal dispute resolution process described in your Welcome Kit from Comcast, you or Comcast may elect to arbitrate that Dispute in accordance with the terms of this Arbitration Provision rather than litigate the Dispute in court. Arbitration means you will have a fair hearing before a neutral arbitrator instead of in a court by a judge or jury.

Both of the arbitration agreements later define "dispute" to mean "any dispute, claim or controversy between you and Comcast, whether based in contract, statute, regulation, ordinance, tort including, but not limited to fraud, misrepresentation, fraudulent inducement, negligence or any other intentional tort, or any other legal or equitable theory," and includes "the validity,

enforceability, or scope of the arbitration provision." The agreements further provide that litigation and arbitration by either party on a class-wide basis is prohibited.

Plaintiffs filed the instant case with this court on October 27, 2012, after both terminated their contracts with defendant. Plaintiffs allege that, after the termination of services with defendant, defendant continues to maintain personally identifiable information on all of its previous customers indefinitely without notifying them, in violation of the CCPA, the CCRA, the Illinois Cable Act and the California Penal Code, and is in breach of an implied contract. In response to plaintiffs' complaint, defendant has moved to compel arbitration, arguing that plaintiffs have agreed that arbitrators, not a court, should adjudicate disputes as defined in the arbitration agreements.

## DISCUSSION

The Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, ("FAA") puts federal courts in the gatekeeper position of determining whether a dispute is one that the parties intended to arbitrate. See AT & T Techs. v. Communications Workers of Am., 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) ("arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit"). Typically, there is a presumption in favor of arbitration, and any doubts regarding whether a dispute falls within the scope of an arbitration agreement are resolved in favor of arbitration. Moses H. Cone Mem. Hosp. v. Mercury Constr. Co., 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1982). However, in First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995), the Supreme Court held that the question of whether a court or an arbitrator should determine whether a dispute is arbitrable may be agreed to ahead of time. The Court

noted that, just as parties may evince their intention about the arbitrability of a suit in arbitration

clauses, they may likewise form an agreement about "*who* has the primary power to decide

arbitrability." Id. (Emphasis added.)  In such a case where the parties may have contracted to

have the question of arbitrability decided by an arbitrator instead of the court, the presumption in

favor of arbitrability is reversed. Id. at 944. In those cases, the court should not "assume that

parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that

they did so." Id.

      In the instant case, defendant argues that the relevant arbitration agreements are clear and

unmistakable evidence that the parties intended an arbitrator to determine the arbitrability of the

claims. Plaintiffs acknowledge both that parties may agree to the submission of the arbitrability

issue to arbitration and that the definition of "dispute" includes "the validity, enforceability, or

scope of the arbitration provision" in their arbitration agreements. Plaintiffs, however, argue that

other portions of the parties' agreements demonstrate the parties' intention that a court, not an

arbitrator, should determine the scope of the arbitration provision, and there is therefore no

"clear and unmistakable evidence" of an agreement on this matter. In support of their argument,

plaintiffs point to the jury waiver provision, which states that "if a claim is brought in a Dispute

that is found by a court to be excluded from the scope of this Arbitration Provision, you and

Comcast have each agreed to waive, to the fullest extent allowed by law, any trial by jury."

(Emphasis added.) Because of these allegedly conflicting provisions, plaintiffs claim that there is

no clear evidence that the parties intended to arbitrate the arbitrability of the agreement.

To resolve this alleged conflict regarding the arbitrability issue, this court interprets the

agreement "with the goal of effectuating the parties' intent, giving contract terms their plain and

ordinary meaning." Kim v. Carter's Inc., 598 F.3d 362, 364 (7th Cir. 2010). The court notes that the arbitration agreements, in their definition provisions that immediately follow the binding purpose provisions, explicitly define an arbitrable dispute to include the "scope of the arbitration provision." Also, according to the arbitration agreements, an arbitrable dispute "is to be given the broadest possible meaning that will be enforced." In contrast, the jury waiver provision cited by plaintiffs is located in a subsection of arbitration clause entitled "Severability." The clause reads:

> If any clause within this Arbitration Provision (other than the class action waiver clause identified in Section E (2) above) is found to be illegal or unenforceable, that clause will be severed from the Arbitration Provision, and the remainder of the Arbitration Provision will be given full force and effect. If the class action waiver clause is found to be illegal or unenforceable, the entire Arbitration Provision will be unenforceable, and the dispute will be decided by a court. In the event that this entire Arbitration Provision is determined to be illegal or unenforceable for any reason, or if a claim is brought in a Dispute that is found by a court to be excluded from the scope of this Arbitration Provision, you and Comcast have each agreed to waive, to the fullest extent allowed by law, any trial by jury.

When one interprets the last sentence quoted by plaintiffs within the context of the clause, it is clear that the parties intended that when a court determines that the court should adjudicate the arbitrality issue, despite the agreement between defendant and plaintiffs, and finds a dispute to fall outside the scope of arbitration, a right to jury trial is waived. The severability clause contains a number of potential scenarios that attempt to provide guidance in the event the arbitration clause is found to be unenforceable. These "if-then" scenarios do not dilute the broad scope of the arbitration provision, which explicitly refers to "all disputes . . . includ[ing] the validity, enforceability or scope of this Arbitration Provision." The arbitration agreements therefore demonstrate an intent to include the arbitrability issue within the scope of arbitration.

Plaintiffs' further argue that defendant's own Privacy Policy excluded the CCPA Claims from the arbitration provision, but because this court has found that plaintiffs agreed with defendant to subject any arbitrability issue to arbitration, the appropriate adjudicator to decide this issue is an arbitrator, not this court. This court would proceed to address plaintiffs' CCPA claim only if an arbitrator determines that the scope of the arbitration agreement is not arbitrable.

In addition to their argument regarding arbitrability, plaintiffs present two other grounds to support their contention that the arbitration agreements should not be enforced: (1) the agreements to arbitrate are contracts of adhesion and therefore indicative of procedural unconscionability; and (2) the arbitration provision is substantively unconscionable. In response, defendant argues that pursuant to the agreement, these arguments are included within the "validity" and enforceability" of the arbitration agreement, which must be submitted to arbitration.

In Rent-A-Ctr., W., Inc. v. Jackson, _U.S._, 130 S. Ct. 2772, 2779, 177 L. Ed. 2d 403 (2010), confronted with a similar issue, the Supreme Court held that unless the party opposing arbitration challenges the delegation provision – the provision that delegates to an arbitrator the authority to determine the validity of an arbitration clause – rather than the agreement as a whole, "we must treat [the arbitration provision] as valid under [9 U.S.C.] § 2, and must enforce it under [9 U.S.C.] §§ 3 and 4, leaving any challenge to the validity of the [arbitration agreement] as a whole for the arbitrator." In In re Checking Account Overdraft Litig. MDL No. 2036, 674 F.3d 1252, 1256 (11th Cir. 2012), the Fifth Circuit, citing Rent-A-Center, explained that "[a] delegation provision is severable from the rest of the arbitration agreement and must be challenged 'specifically.'"

6

In the instant case, both of plaintiffs' claims alleging procedural and substantial unconscionability are directed at the arbitration agreement as a whole.  Plaintiffs allege that the arbitration agreements are contracts of adhesion because the agreements are form contracts, prepared entirely by defendant and offered on a take-it-or-leave-it basis.  Plaintiffs further contend that the provision is substantively unconscionable because a number of clauses in the provision favor defendant. Because the delegation clause, which delegates to an arbitrator the authority to determine the enforceability of the arbitration provision, is severable from the rest of the arbitration agreement, plaintiffs' challenge to the arbitration agreement as a whole does not affect the validity of the delegation clause. See Rent-A-Center, 130 S.Ct. at 2777-79; In re Checking Account Overdraft, 674 F.3d at 1256. As a result, pursuant to plaintiffs' and defendant's agreement that a dispute regarding the enforceability of the arbitration agreement shall be adjudicated through arbitration, an arbitrator shall determine the conscionability of the arbitration agreement as a whole.

<b><u>CONCLUSION</u></b>

For the foregoing reasons, defendant's motion to compel arbitration and stay litigation is granted.  The court expects the parties to expeditiously initiate arbitration and have the arbitrability issue decided promptly.  The matter is set for a report on status on July 10, 2013, at 9:00 a.m.

**ENTER:**      **May 1, 2013**

**Robert W. Gettleman**
**United States District Judge**